CJ-25-8410
Stinson


*1063782109*

## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

1., MELISSA RITTER, and ⟩
TONY TOWERY ⟩
⟩  **CJ - 2025 - 8 4 1 0**
Plaintiff, ⟩  FILED IN DISTRICT COURT
⟩  OKLAHOMA COUNTY
v. ⟩
⟩  CJ-    **NOV 1 2 2025**
1., OKLAHOMA COUNTY CRIMINAL ⟩
JUSTICE AUTHORITY d/b/a ⟩  **RICK WARREN**
OKLAHOMA COUNTY DETENTION ⟩  **COURT CLERK**
CENTER ⟩  108 _____
⟩
Defendant. ⟩  **JURY TRIAL DEMANDED**
⟩  **ATTORNEY LIEN CLAIMED**

### PETITION

**COME NOW THE PLAINTIFFS,** and for their cause of action herein allege that:

1. The Plaintiffs are Melissa Ritter and Tony Towery, adult residents of Cleveland County, Oklahoma.

2. The Defendant is the Oklahoma County Criminal Justice Authority, which owns and operates the Oklahoma County Detention Center, located in Oklahoma County, Oklahoma.

3. All of the actions complained of occurred in Oklahoma County, Oklahoma, and the Defendant may be served in Oklahoma County, Oklahoma, such that venue is proper under 12 O.S. § 133.

4. At the time of Plaintiff Ritter's termination, she was the Chief Investigator for the Office of Professional Standards at the Oklahoma County Detention Center.

5. At the time of Plaintiff Towery's termination, he was the Chief of Operation for the Oklahoma County Detention Center.

6. On or about December 5, 2023, a private entity distributed cash bonuses to

-1-

EXHIBIT 1

employees of the Detention Center. Plaintiff Towery refused to accept this money because to his understanding it was unlawful to distribute and accept private gifts of this nature.  The Oklahoma County Handbook, which is used by Authority employees, provides in Par. 2.12 (Gifts) that gifts are prohibited from vendors.

7.    On or about July 9, 2024, the Oklahoma Health Department appeared at the Detention Center to perform the statutorily mandated jail inspections. Plaintiff Towery directed Chris Sherman, the Chief Financial Officer, to allow the inspectors access to the facility. Then CEO Brandi Garner (head of the Oklahoma County Criminal Justice Authority) overruled him and denied the inspectors access to the facility.

8.    Starting around July 2024, Plaintiff Ritter had been requested to certify certain employees  in the Education and Employment Ministry ("TEEM") and Diversion Hub for Criminal Justice Information Services ("CJIS") access.

9.    Plaintiff Ritter explained to Ms. Garner that many of these persons in the TEEM and Diversion Hub had felony convictions and that it was unlawful to allow them access to this information.

10.    In approximately September of 2024, Plaintiff Towery was confronted by Greg Couch, who was the Chief Security Systems Officer.  Mr. Couch advised Plaintiff Towery that he had been instructed by Ms. Garner to install 'bugs' (audio listening devices) into the office of the Tenth Floor Shift Commander's office.

11.    Plaintiff Towery instructed Mr. Couch not to take action because it was unlawful and Plaintiff Towery refused to be part of such an unlawful activity.

12.    On or about October 16, 2024, Plaintiff Ritter was called to return to her office from a meeting by Ms. Garner to again discuss TEEM and Diversion Hub

-2-

EXHIBIT 1

members' access to confidential criminal background records. Ms. Garner again directed Plaintiff to certify those employees for CJIS access to confidential information. Plaintiff refused to take such action.

13.   On or about October 16, 2024, Plaintiff Ritter contacted Plaintiff Towery and advised him about Ms. Garner's directive.

14.   Plaintiff confirmed with Ms. Ritter that allowing such authorization appeared to be a criminal violation and that she should not take this action is it would involve both of them in potentially unlawful actions.

15.   On or about November 12, 2024, Plaintiffs prepared a letter they sent anonymously to Vicki Behanna, Oklahoma County District Attorney; J.J. Humphreys, Member of the Oklahoma House of Representatives; Bobby Cleveland; and David Ramsey. In the letter, Plaintiffs reported waste of resources, fabricated positions, and falsified job positions.

16.   In reporting such actions, the Plaintiffs were acting as citizens and exercising their First Amendment rights as citizens.

17.   On or about November 13, 2024, Ms. Garner informed Plaintiff Ritter that Plaintiff Ritter would be terminated and that she could either voluntarily resign or be terminated. Plaintiff Ritter did not resign and was therefore terminated.

18.   On or about November 15, 2023, Plaintiff Towery was terminated.

19.   The termination was due to the Plaintiffs' refusal to issue such illegal authorizations and for reporting fraudulent conduct.

20.   Plaintiffs' refusal to commit a crime is protected by Oklahoma's ***Burk*** tort doctrine of wrongful termination: "[A] ***Burk*** tort has been sanctioned where the discharge was claimed to have been motivated by the employee's refusal to commit a crime." ***Gabler v. Holder & Smith, Inc.***, 2000 OK CIV APP 107, ¶ 43, 11 P.3d 1269, 1277. Defendant "could not condition employment upon

-3-

EXHIBIT 1

[Plaintiff's] agreement to violate criminal law without being subject to a tortious claim of wrongful discharge in violation of public policy." *Id.,* at ¶ 45, 11 P.3d at 1278.

21.    Reporting fraud is protected by Oklahoma's public policy against fraud in the use and management of public property and public funds, as well as by Oklahoma's constitutional protections of free speech found in Okla. Const. Art 2, sec 22, and by the First Amendment. Fraud is contrary to Oklahoma's public policy expressed at 21 O.S. § 1541.1 (criminally prohibiting fraud committed by any person); 15 O.S. § 58 (civilly defining and prohibiting fraud); 15 O.S. § 59 (Civilly defining and prohibiting constructive fraud), and 76 O.S. § 3 (Civilly defining and prohibiting deceit), and to Oklahoma's decisional law as set out in *First State Bank v. Thomas*, 1949 OK 67, ¶¶ 15, 16, 201 Okla. 325, 328, 205 P.2d 866, 869 (condemning fraud and explaining that "fraud is a 'generic' term and embraces all unfair ways by which another is cheated or unlawfully imposed upon."); *Barker v. State Ins. Fund*, 2001 OK 94, ¶ 23, 40 P.3d 463, 470 (Protected whistleblowing involves activities "such as reporting fraudulent activity"); *Darrow v. Integris Health, Inc.*, 2008 OK 1, 176 P.3d 1204 (internal or external reporting of crimes is protected by Oklahoma's public policy), *inter alia.*, such that Defendant's termination of the Plaintiff constituted a violation of Oklahoma's *Burk* doctrine of wrongful termination.

22.    As a direct result of Defendant's unlawful termination of the Plaintiffs, the Plaintiffs have suffered lost wages and benefits, past, present, and future, and dignitary harms in the form of mental and emotional distress, for which they are entitled compensation.

23.    Plaintiffs submitted a tort claim notice under the Oklahoma Governmental Tort Claims Act on or about February 20, 2025.

EXHIBIT 1

24.   The Defendant received the tort claim notice on February 24, 2025.

25.   The tort claim is deemed or is actually denied by the passage of ninety (90) days from the service of the same. This action is timely filed within one hundred and eighty (180) days of the denial of the tort claim.

## PRAYER

**WHEREFORE,** Plaintiffs pray they be awarded their actual, liquidated, and punitive damages herein, together with costs, pre- and post judgment interest and attorney's fees, and any other relief as may be appropriate.

**RESPECTFULLY SUBMITTED THIS _2__ DAY OF NOVEMBER, 2025.**

Hammons, Hurst & Associates

HAMMONS, HURST, & ASSOC
Mark Hammons, OBA No. 3784
Tammy Vo, OBA No. 36288
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-6100
Facsimile:  (405) 235-6111
Email: assistant@hammonslaw.com
        tammy@hammonslaw.com
*Counsel for Plaintiff*

EXHIBIT 1